**FILED**
APR - 2 2010
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Dr. SCOTT J. BRODIE )
925 Hardwick Road )
Blairstown, NJ 07825 )
)
      Plaintiff, )
)
v. )
)
UNITED STATES DEPARTMENT OF HEALTH )
AND HUMAN SERVICES )
200 Independence Avenue, S.W. )
Washington, D.C. 20201 )
)
KATHLEEN SEBELIUS )
Secretary of Health and Human Services )
U.S. Department of Health and Human Services )
200 Independence Avenue, S.W. )
Washington, D.C. 20201 )
)
DAVID WRIGHT )
Acting Director, Office of Research Integrity )
U.S. Department of Health and Human Services )
1101 Wooton Parkway, Suite 700 )
Rockville, MD 20852 )
)
      and )
)
NANCY GUNDERSON )
Acting Deputy Assistant Secretary )
Office of Grants and Acquisition Policy and )
Accountability )
U.S. Department of Health and Human Services )
Hubert H. Humphrey Building, Room 336-E )
200 Independence Avenue, S.W. )
Washington, D.C 20201 )
)
      Defendants. )
_____)

Case: 1:10-cv-00544
Assigned To : Friedman, Paul L.
Assign. Date : 4/2/2010
Description: Admn Agency Review

**COMPLAINT**

1

This case seeks judicial review of a final administrative decision of the United States Department of Health and Human Services ("HHS"), which debarred the Plaintiff, Dr. Scott J. Brodie, as a federal contract participant for a period of seven years in violation of the Administrative Procedure Act, 5 U.S.C. §§ 551-706 (the "APA"), the applicable rules of the defendant Office of Research Integrity, and the United States Constitution, including the Fourth and Fifth Amendments.

## JURISDICTION AND VENUE

1. Jurisdiction is founded on the existence of federal questions arising under the Fourth and Fifth Amendments of the Constitution of United States, sections 551-706 of the APA, and the regulations of HHS in force at the time of the alleged violation resulting in plaintiff's debarment.

2. Venue is established in this District pursuant to 28 U.S.C. § 1391(b) and 5 U.S.C. § 703.

## PARTIES

3. Plaintiff, Dr. Scott J. Brodie ("plaintiff" or "Dr. Brodie") is a citizen of the United States and resides in New Jersey.

4. Defendant, United States Department of Health and Human Services ("HHS"), is an agency of the United States whose headquarters office is located at 200 Independence Avenue, S.W., Washington, D.C. 20201.

5. Defendant, the Honorable Kathleen Sebelius, is the Secretary of Health and Human Services (the "Secretary"). The Secretary is sued in her official capacity as the department head of HHS and its components.

6. David Wright is the Acting Director of the HHS Office of Research Integrity ("ORI"). Mr. Wright is sued in his official capacity as the head of ORI, located at 1101 Wooton Parkway, Suite 700, Rockville, MD 20852.

7. Nancy Gunderson is the HHS Acting Deputy Assistant Secretary for the Office of Grants and Acquisition Policy and Accountability. Ms. Gunderson is sued in her official capacity as the HHS official designated to impose debarment.

## FACTS

8. Dr. Brodie was an assistant professor in the Department of Laboratory Medicine at the University of Washington ("UW") from 2000 to 2002.

9. In 2002, UW undertook an investigation relating to allegations of "misconduct" in the performance of Dr. Brodie's medical research between 1999 and 2001.

10. During the UW investigation, Dr. Brodie's entire office and computers were searched and seized.

11. No detailed inventory records of the items seized were produced.

12. During the investigation, Dr. Brodie was banned from his lab at UW, and crime scene tape was placed around the lab in which he worked.

13. Dr. Brodie was not allowed access to his laboratory and other materials with which to prepare a response to UW and, thus, had to rely on his memory alone in responding

14. During the UW investigation, UW violated its procedural rules by not allowing Dr. Brodie to comment on UW's investigation findings, contrary to the rules in affect at the time, including 42 C.F.R. part 50.

15. The confidentiality of the investigation was breached by UW's Division of Investigative Oversight, Office of Research Integrity ("DIO") and Office of Scholarly Integrity ("OSI")

when it posted crime scene tape in Dr. Brodie's lab and on his office door; when UW investigators gave information to others not a party to the inquiry/investigation; when the police, in plain view of lab personnel, escorted Dr. Brodie out of the UW Building; when UW officials announced to the lab and adjacent labs of the inquiry/investigation; and, when UW officials told UW employees to not communicate with Dr. Brodie.

16. UW issued a report on December 12, 2003, finding 15 allegations of misconduct against Dr. Brodie. On March 7, 2004, UW issued an erratum to the report, in which Dr. Brodie was "banned from future employment at UW."

17. On September 17, 2008, ORI notified Dr. Brodie of its intent to debar him from conducting medical research for the federal government for a period of seven years based on the UW report.

18. On October 17, 2008, Dr. Brodie contested the HHS proposed debarment and an HHS Administrative Law Judge ("ALJ") was assigned to review ORI's findings.

## The Applicable Regulation

19. The appropriate legal standard for any investigation or hearing in Dr. Brodie's case was the standard set forth in a federal regulation issued in 1989. Those regulations provided that "Misconduct or Misconduct in Science" was defined to mean:

> fabrication, falsification, plagiarism, or other practices that seriously deviate from those that are commonly accepted within the scientific community for proposing, conducting, or reporting research. It does not include honest error or honest differences in interpretations or judgments of data.

42 C.F.R. § 50.102 (Final Rule 1989) (The "1989 Regulation"). The regulation requires proof of practices which: (i) "*seriously deviate*" from those (ii) commonly accepted within the "*scientific community*" for (iii) proposing, conducting or reporting research. Under the 1989 Regulation, the relevant inquiry, which must be supported by the record, is: what were

the scientific community standards and how, based on those standards, did the practices alleged seriously deviate from them in proposing, conducting or reporting research. Honest error or honest differences interpretations or judgments of data was not considered misconduct.

20. The applicable rules associated with the 1989 Regulation provide that allegations must be inquired into "immediately" and that, "an inquiry must be completed within 60 calendar days of its initiation unless circumstances clearly warrant a longer period," pursuant to 42 C.F.R. § 50.103(d)(1).

21. Under the applicable rules associated with the 1989 Regulation, individuals are to be afforded "confidential treatment to the maximum extent possible, a prompt and thorough investigation, and an opportunity to comment on the allegations and findings of the inquiry and/or investigation," pursuant to 42 C.F.R. § 50.103(d)(3).

22. Section 50.103(d)(7) of the 1989 regulation requires that the investigation include the "examination of all documentation," which is intended to ensure that individuals under investigation are provided basic due process procedural protections.

23. The 1989 Regulation was replaced in 2005, 70 Fed. Reg. § 28,370 (May 17, 2005), with a new set of standards set forth in 42 C.F.R. Part 93 (the "2005 Regulation"), which included:

   (a) Use of the term "performing" instead of "conducting" research and changed the scope of the covered activity to include misconduct occurring in connection with the "reviewing" of research. *Id.* at 20,779-80.

   (b) Changes to the relevant inquiry from "serious deviation" from accepted practices in the scientific community to "significant departure," and the reference point of the "scientific community" to the "relevant research community." *Id.* at 20,780.

(c) Significantly expanding the level of intent from "beyond an intentional and knowing standard to include recklessness." *Id.*

(d) Requiring "institutions, where appropriate, to give the respondent copies of, reasonable, supervised access, to the research records." *Id.* at 20,781.

(e) Requiring that, "In reaching its decision, the panel [DAB] does not rely on the administrative record developed by the institution or ORI during its oversight review but instead relies *solely* upon testimony and other evidence presented by the parties at the hearing." *Id.* at 20,783 (emphasis added).

(f) The new rules became final on May 17, 2005 (70 Fed. Reg. 28,370).

*See* 42 C.F.R. § 93.104.

24. Both the 1989 and 2005 Regulations require the accused to prove his innocence based on a preponderance of the evidence.

25. As discussed *infra*, the ALJ assigned to review the case determined that the applicable standard for Dr. Brodie's case is that which is set forth above in paragraph 19, which was confirmed by the ALJ's initial Pre-Hearing Order dated November 14, 2008 ("Pre-Hearing Order"), in which the ALJ stated, "ORI has used the definition of scientific misconduct applicable at the time the alleged misconduct occurred (before 2003), and I will use that same definition when deciding the case."

26. The 2005 Regulation provided that with regard to matters pending at the time the new rules came into effect, the new procedural requirements would be "applicable to the institution's subsequent steps in that proceeding," but that "the definition of research misconduct that was in effect at the time the misconduct occurred would apply." 70 Fed. Reg. 28,370, 28380 (2005).

ORI Investigative Proceedings

27. During the course of the proceedings before the ALJ, the following events occurred:

(a) November 14, 2008, an Initial Pre-Hearing Order was issued by the ALJ.

(b) On November 25, 2008, ORI filed a Motion to Dismiss Dr. Brodie's Hearing Request.

(c) On January 29, 2009, Ruling Granting in Part and Denying in Part Motion by ORI to Dismiss Request for Hearing was issued by ALJ.

(d) On May 22, 2009, ORI filed its Pre-Hearing Brief.

(e) On July 6, 2009, Dr. Brodie filed his Pre-Hearing Brief.

(f) On July 10, 2009, ORI filed a Motion to Exclude Respondent July 6, 2009 Pre-Hearing Brief.

(g) On July 16, 2009, the ALJ issued an Order to Revise Court Documents.

(h) On July 27, 2009, Dr. Brodie filed an Amended Pre-Hearing Brief and Witness Testimony.

(i) On August 11, 2009, Dr. Brodie filed Objections to ORI's redacted proffered exhibits.

(j) On August 28, 2009, Dr. Brodie filed redacted proffered exhibits.

(k) On October 27, 2009, ORI's filed a Reply to Dr. Brodie's Objections to Pre-Hearing Exhibits.

(l) On November 11, 2009, ORI filed a Motion for Summary Disposition.

(m) On November 20, 2009, the ALJ ruled on Objections to Exhibits.

(n) On December 4, 2009, ORI filed its Final Witness List.

(o) On December 4, 2009, Dr. Brodie filed his Final Witness List.

 (p) On December 16, 2009, ORI filed an Opposition to Dr. Brodie's Request for Permission to Admit Additional Declarations.

 (q) On December 18, 2009, ORI filed an Opposition to Dr. Brodie's Request for Reconsideration on Admissibility of Certain Exhibits.

 (r) On January 12, 2010 Recommended Decision Granting Summary Disposition to ORI issued by the ALJ.

28. In its May 22, 2009 Pre-Hearing Brief, ORI relied on the 2005 Regulation as the relevant standard to apply to Dr. Brodie's conduct.

Administrative Law Judge Decisions

29. In January 2009, the ALJ issued a "Ruling Granting in part and Denying in part Motion by Office of Research Integrity to Dismiss Request for Hearing" ("Ruling"), in which the ALJ found that:

 (a) Plaintiff did not raise triable issues challenging ORI's findings that Public Health Service (PHS) grant applications and progress reports, published papers, manuscripts, PowerPoint presentations, and other documents and materials authored or co-authored by Respondent contained materially false statements and data; but

 (b) Plaintiff raised a triable issue concerning his intent in submitting or publishing the documents and presentations containing the false statements and data.

Ruling at 1.

30. Following the January 29, 2009 decision, Dr. Brodie began preparing for trial before the ALJ, which was set for February 11 and 12, 2010.

31. On June 17, 2009, Dr. Brodie was informed that counsel for UW would not permit the plaintiff any direct communications to interview any UW employee.

32. On July 16, 2009, the ALJ ruled that the parties were only permitted to present evidence by affidavit.

33. In November 2009, Dr. Brodie was informed that the HR Director for Schering-Plough told Schering-Plough employees who cooperated with Dr. Brodie in this case before the ALJ were subject to discipline.

34. On November 10, 2009, ORI filed for Summary disposition.

35. On or about December 4, 2009, Dr. Brodie filed his response.

36. On December 4, 2009, Dr. Brodie filed his witness lists, witness statements, and exhibits.

37. In anticipation of the hearing scheduled for February 11-12, 2010, and in reliance on the ALJ's decision that triable issues of fact had been raised as to intent, Dr. Brodie prepared to testify as to his intent (without conceding that the ALJ had applied the appropriate standards to his case as to findings of misconduct). A summary of Dr. Brodie's intended testimony is attached to Exhibit 2 as Appendix A.

38. The intended testimony shows that that Dr. Brodie did not seriously deviate from accepted standards, and that any error was an honest mistake. It also shows that many, if not all, of the allegations involve review of data which is not part of the definition of "misconduct" under the 1989 Regulation.

39. On January 12, 2010, prior to the scheduled hearing, the ALJ issued a "Recommended Decision Granting Summary Disposition to the Office of Research Integrity" (the "Recommended Decision"), attached hereto as Exhibit 1.

40. The Recommended Decision denied Dr. Brodie the scheduled hearing, the right to have considered timely submitted declarations and an opportunity to confront the evidence and witnesses against him, even though the ALJ determined in January 2009 that Dr. Brodie had presented a triable issue of fact concerning his intent.

41. In the Recommended Decision, the ALJ granted ORI's request for summary disposition under the standards developed for Rule 56(c) of the Federal Rules of Civil Procedure, citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Recommended Decision at 5. Under the Federal Rules of Civil Procedure Rule 56(c), for a federal court to grant summary judgment it must find "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The consideration of a motion for summary judgment requires that all facts and reasonable inferences be viewed in the light most favorable to the respondent and that the decider apply the correct rules of law to those facts.

42. In its "Memorandum of Points and Authorities In Support of Motion for Summary Disposition" ("Memorandum"), ORI presented the following issues to the ALJ:

    1.  Whether Respondent intentionally, knowingly or recklessly submitted or published or caused the submission or publication of the materially false information in the documentation and presentations relevant to ORI Findings 1-5: and
    2.  Whether the proposed debarment period of seven years is reasonable.

    Memorandum at 7.

43. Dr. Brodie filed a response to ORI's Memorandum that showed that there were genuine issues of material fact, discussed in more detail below, and that a hearing was required.

44. Having decided that the relevant law was that set forth in the 1989 Regulation, the ALJ failed to apply the standards set forth in those regulations by failing, for example, to identify the accepted practices within the scientific community, how Dr. Brodie seriously deviated from those practices, or to identify areas of "honest error" or "honest difference in interpretation or judgments of data."

45. In the discussions and findings relating to ORI Exhibits #4, #6, #7, #8, #10, #12, #14, the ALJ specifically applied the "recklessness" standard, which is not part of the 1989 Regulation, but *is* specifically added to the 2005 Regulation.

46. The ALJ determined that Dr. Brodie "published information that he knew to be false or fabricated" or that he "published it with indifference to the truth of its contents." Recommended Decision at 9.

47. In fact, during the course of his work, Dr. Brodie was presented with electronic data that he believed was true and correct and all of the publications involved in their "findings and conclusions" were accurate at the time written and remain accurate, and all the research in which he was involved can be replicated within the scientific community.

48. The ALJ admitted that he was not a person with a science background but he, nonetheless, made decisions based on his untrained views and without evidence in the record.

49. On February 1, 2010, Dr. Brodie, through his counsel, requested that defendant Gunderson not debar him, setting forth various reasons to support a rejection of the ALJ's Recommended Decision. The letter is attached as Exhibit 2 and incorporated herein.

50. The Recommended Decision is replete with factual mistakes that, at a minimum, show that genuine issues of material fact exist, examples of which are set forth in the letter sent to defendant Gunderson. *See* Exhibit 2.

51. The declarations filed in the case by the Respondent also established that there were genuine issues of material fact. *See* Exhibit 2, which lists some of the evidence from the declarations that is contrary to those found by the ALJ, including that the actual data from the alleged images were never presented by ORI or examined by the ALJ.

52. The regulation that Dr. Brodie was found to have violated is vague and unconstitutional in taking an interest in pursuing a profession without requiring clear and convincing evidence.

53. On February 26, 2010, Dr. Brodie, through counsel, sent defendant Gunderson a letter stating that it appeared that the Assistant Secretary for Health was not taking any action on the Recommended Decision and requested a meeting with defendant Gunderson.

54. On March 18, 2010, defendant Gunderson sent plaintiff a letter stating that she was imposing a debarment for a period seven years.

55. On March 24, 2010, Dr. Brodie requested a stay of the debarment decision pursuant to 5 U.S.C. § 705 pending judicial review; that request is pending.

## COUNTS

### Count I: Violation of the Administrative Procedure Act

56. Paragraphs 1 through 55 are incorporated as if set forth fully herein.

57. The decision of defendant Gunderson to disbar Dr. Brodie for a period of seven years constitutes a "final decision" within the meaning of the APA, 5 U.S.C. § 704.

58. In his examination of Dr. Brodie's conduct, the ALJ relied on a standard for research misconduct requiring a finding of recklessness, where such a finding (1) was not a component of the 1989 Regulation; and, (2) contrary to the ALJ's earlier assertion in the Pre-Hearing Order that the 1989 Regulation was the appropriate standard to apply to Dr. Brodie's conduct.

59. The ALJ's conclusion in January 2009 that Dr. Brodie may have published his research "with indifference to the truth of its contents" is a standard that did not exist in the 1989 Regulation.

60. The ALJ concluded in January 2009 that there existed triable issues of fact with regard to Dr. Brodie's intent in submitting or publishing the documents and presentations containing the false statements and data.

61. On January 12, 2010, the ALJ granted summary disposition to the ORI following the finding of the lack of triable issues of fact on Dr. Brodie's intent and prior to an administrative hearing intended to resolve those issues of fact.

62. UW's and ORI's investigations violated the procedural rules found in 42 C.F.R. Part 50 because the inquiry was not completed in 60 days; Dr. Brodie was not given an opportunity to comment on the report of the inquiry; he was not afforded the confidential treatment that the regulations require, and the investigation far exceeded the time limits set forth in 42 C.F.R. § 50.104(2).

63. The Recommended Decision of debarment from federal contracts for seven years and defendant Gunderson's acceptance of the ALJ's Recommended Decision are based neither on the relevant law nor the material facts.

64. Defendant Gunderson and HHS did not require clear and convincing evidence in its finding that Dr. Brodie engaged in research misconduct and deserved a debarment of seven years.

65. Defendants' actions as described above are:

    1.    arbitrary and capricious;

    2.    an abuse of discretion;

    3.    not in accordance with law;

   4.  a failure to observe proper procedures; and,

   5.  contrary to Dr. Brodie's constitutional rights.

Count II: Violation of Fourth Amendment

66. Paragraphs 1 through 65 are incorporated as if set forth fully herein.

67. On or before on January 8, 2003, Defendants violated Dr. Brodie's Fourth Amendment constitutional rights to be secure against unreasonable searches and seizures when the entire contents of Dr. Brodie's office were searched and all personal and professional contents were seized.

68. Dr. Brodie had a reasonable expectation of privacy in his own office, work computer, and personal and professional records, files and notes, in a space which was assigned by his employer for his personal and exclusive use.

69. The search of Dr. Brodie's office by UW and the seizures of his personal notes, research and records was unreasonable in the circumstances.

70. UW did not have a compelling reason to search Dr. Brodie's office without his consent and in the absence of a warrant or other court order.

71. ORI and HHS used documents and records improperly obtained in UW's search in its investigation of Dr. Brodie's conduct.

72. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of plaintiff's constitutional rights.

Count III: Violation of Fifth Amendment Right to Due Process

73. Paragraphs 1 through 72 are incorporated as if set forth fully herein.

74. Defendants denied plaintiff the right not to be deprived of liberty or property without due process as guaranteed by the Fifth Amendment to the Constitution of the United States.

75. Dr. Brodie has a protected liberty interest in his reputation and continued employment as a skilled medical researcher.

76. Defendant Gunderson and HHS did not require clear and convincing evidence in its finding that Dr. Brodie engaged in research misconduct and deserved a debarment of seven years.

77. The ALJ denied Dr. Brodie with an opportunity for a fair hearing when he granted summary disposition to the ORI following the finding of triable issues of fact and prior to the scheduled administrative hearing intended to resolve those issues of fact.

78. Defendants violated Dr. Brodie's constitutional rights of due process by denying him a hearing to resolve issues of material fact, for which Dr. Brodie was entitled to present evidence and cross-examine witness.

79. Defendant Gunderson and HHS seriously damaged Dr. Brodie's standing and associations in both the medical and veterinary communities by disbarring Dr. Brodie from government practice for a period of seven years based on an incomplete factual record and an arbitrary and capricious recommendation by the ALJ.

80. The Defendants seriously damaged Dr. Brodie's standing and associations in both the medical and veterinary communities by failing to maintain the confidentiality of the administrative proceedings against Dr. Brodie.

81. Such actions will prevent Dr. Brodie from taking advantage of other employment opportunities by automatically excluding him from a definite range of employment opportunities with the government without requiring proof by clear and convincing evidence of his violation of the law.

82. Such actions infringe upon Dr. Brodie's protected liberty interest by destroying his ability to pursue his chosen profession, both in the public or the private sector.

83. Such actions constitute an arbitrary adverse employment action.

84. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of Dr. Brodie's constitutional rights.

### RELIEF REQUESTED

WHEREFORE, the Plaintiff prays for the following relief:

A.     An immediate injunction prohibiting the debarment of Dr. Brodie pending judicial review, including the entry of Dr. Brodie's name in the General Services Administration "Excluded Parties List System."

B.     An order granting declaratory relief as appropriate;

C.     An order granting preliminary and permanent injunctive relief;

D.     An order reversing the order of disbarment;

E.     All other relief which is just and fair under the law.

April 2, 2010

Respectfully submitted,

_____
John Hardin Young, D.C. Bar No. 190553
Elizabeth F. Getman, D.C. Bar No. 984738
Sandler, Reiff & Young, P.C.
300 M Street, S.E. Suite 1102
Washington, DC 20003
202.479.1111
young@sandlerreiff.com

*Counsel to Plaintiff Dr. Scott J. Brodie*

16

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2010, Plaintiff Dr. Scott Brodie's Complaint was filed with the Clerk of the Court, and pursuant to F.R.C.P. Rule 4(i), copies will be served by certified mail, return receipt requested, upon the following parties:

> United States Attorney for the District of Columbia
> 555 4th Street, NW
> Washington, DC 20530
>
> United States Attorney General
> Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

_____
John Hardin Young