UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCOTT J. BRODIE,<br><br>    Plaintiff,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES, et<br>al.,<br><br>    Defendants. | Civil Action No. 10-544 (JEB) |

## MEMORANDUM OPINION

In January 2010, Defendant United States Department of Health and Human Services determined that Plaintiff Scott Brodie had committed research misconduct. For his actions, HHS barred him from participating in projects funded by the federal government for seven years. Plaintiff then filed this suit challenging his debarment under the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.*, and the United States Constitution. He claims that the Administrative Law Judge erred in determining both that he had acted improperly and that a seven-year debarment was appropriate. Having reviewed both sides' Cross-Motions for Summary Judgment, the Court finds Defendants carry the day.

**I.    Background**

Plaintiff is a molecular pathologist and board-certified anatomic pathologist. Compl., Exh. 1 (Recommended Decision Granting Summary Disposition to the Office of Research Integrity) at 1. From 1999 to 2002 -- the time period relevant to this litigation -- he was employed by the University of Washington as a Research Assistant Professor and Director of the Retrovirus Pathogenesis and Molecular Virology Laboratories. Id. at 1-2. In these roles,

1

Plaintiff submitted grant applications, published scientific articles, and conducted presentations. In 2002, the University initiated an investigation into whether Plaintiff had submitted false or fabricated images in his grant applications, articles, and presentations. Id. The University later concluded that Brodie had submitted or presented materials that contained images that he had knowingly and intentionally falsified or fabricated. Id. As a result, the University notified Plaintiff that he was "banned from future employment at UW." Compl., ¶ 16.

On September 17, 2008, the Office of Research Integrity (ORI), part of HHS, filed a charge letter against Brodie asserting that he had engaged in 15 instances of research misconduct and notifying him that it intended to debar him from conducting research supported by federal funds for seven years. Id., ¶ 17. On October 16, Plaintiff informed ORI that he would contest its findings and requested a hearing before an ALJ. Id., ¶ 18. ORI opposed Plaintiff's request, arguing that he had not offered any evidence to dispute the allegations. ALJ Rec. at 2.

The ALJ issued a ruling in January 2009, finding that Plaintiff had raised triable issues concerning his culpability for the false information and the reasonableness of the seven-year debarment proposed by ORI and therefore granting a hearing on such issues. Compl., ¶ 29. In the same order, the ALJ held that Plaintiff "did not raise triable issues challenging ORI's findings that the publication, presentations, grant applications, and other materials published by [Plaintiff] and cited in the charge letter contained materially false statements, images, and data." Id. The ALJ scheduled the hearing for February 11, 2010. Id., ¶ 30. In the meantime, the parties proceeded with discovery and filed pre-hearing exchanges of proposed evidence pursuant to the ALJ's pre-hearing order. ALJ Rec. at 2. Before the hearing, on November 10, 2009, however, ORI moved for summary disposition, which Plaintiff opposed. Id.

2

On January 12, 2010, the ALJ issued his Recommended Decision Granting Summary Disposition to the Office of Research Integrity. See ALJ Rec. at 1. In his Recommendation, the ALJ determined that "[t]he only reasonable inference that I can draw from the undisputed facts of this case is that [Plaintiff] knowingly and intentionally, and on a massive scale, published or attempted to publish false or fabricated information that was material to the research that he performed." Id. at 6. The ALJ's decision further recommended debarment for seven years based on the amount of falsified information. Id. at 27. The HHS Debarring Official accepted the ALJ's recommendation and issued a final notice on March 18, 2010, debarring Plaintiff from procurement and nonprocurement transactions with the federal government for seven years. Compl., ¶ 54. In doing so, she rejected Plaintiff's request for an oral hearing on the debarment issue.

On April 2, 2010, Plaintiff filed suit in this District challenging his debarment and seeking a preliminary injunction enjoining the Agency from such action. Judge Paul Friedman, to whom this case was previously assigned, denied Plaintiff's Motion for Preliminary Injunction on June 4, 2010, finding that Plaintiff had neither demonstrated a likelihood of success on any of his claims nor an irreparable injury. Following that ruling, the parties briefed the issues in the Cross-Motions now before the Court.[1]

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). The mere existence of a factual dispute, by itself, is

---

[1] The Court has reviewed Plaintiff's Motion, Defendants' Cross-Motion and Opposition to Plaintiff's Motion, Plaintiff's Reply and Opposition to Defendants' Cross-Motion, and Defendants' Reply.

3

insufficient to bar summary judgment. Liberty Lobby, 477 U.S. at 248. To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier of fact could find for the non-moving party. Laningham v. U.S. Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987); Liberty Lobby, 477 U.S. at 251-52 (court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

Although styled Motions for Summary Judgment, the pleadings in this case more accurately seek the Court's review of an administrative decision. The standard set forth in Rule 56(c), therefore, does not apply because of the limited role of a court in reviewing the administrative record. See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006) (citing National Wilderness Inst. v. United States Army Corps of Eng'rs, 2005 WL 691775, at *7 (D.D.C. 2005); Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995), amended on other grounds, 967 F. Supp. 6 (D.D.C. 1997)). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Id. (internal citations omitted). Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review. See Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977), cited in Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." F.C.C. v. Fox Television Stations, Inc., 129 S.Ct. 1800, 1810 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and

conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this "narrow" standard of review, "a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). An agency is nonetheless required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. (internal quotation omitted). The reviewing court thus "may not supply a reasoned basis for the agency's action that the agency itself has not given." Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285-86 (1974) (internal quotation omitted). Nevertheless, a decision that is not fully explained may be upheld "if the agency's path may reasonably be discerned." Id. at 286. The Court should focus its review on the administrative record. See Camp v. Pitts, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

**III. Analysis**

The gravamen of Plaintiff's case is that the ALJ's decision was arbitrary and capricious for a number of reasons. As ancillary arguments, Plaintiff also claims that the ALJ's grant of summary disposition violated his due process rights under the Fifth Amendment and that the University violated his Fourth Amendment right against unreasonable searches and seizures. The Court will address each in turn.

A. Culpability Standard

Plaintiff first contends that the ALJ's decision was arbitrary and capricious because he applied an improperly low standard of "recklessness" when determining whether Brodie had

5

committed research misconduct. Motion at 11-15. Research misconduct is defined in this manner:

> Misconduct or Misconduct in Science means fabrication, falsification, plagiarism, or other practices that seriously deviate from those that are commonly accepted within the scientific community for proposing, conducting, or reporting research. It does not include honest error or honest differences in interpretations or judgments of data.

42 C.F.R. § 50.102.[2] As the ALJ noted, the regulation is silent on the level of intent required, except to exclude honest error. ALJ Rec. at 8. Aware of such absence, the ALJ examined a prior decision by HHS's Departmental Appeals Board on the issue of intent. Id. (discussing Dr. Rameshwar K. Sharma, 1993 WL 742551 (DAB No. 1431 (1993)). The ALJ stated, "The Board [in Sharma] drew a distinction between honest error and statements that are made with knowledge that they would mislead the reader. The latter type of statement, as opposed to mere negligence, constituted misconduct." Id. As the ORI Charge Letter cited Plaintiff with 15 instances of "knowingly and intentionally" publishing false images, see Admin. Record at 2059 (ORI Charge Letter), the ALJ elaborated:

> I conclude that "intentionally" publishing false or fabricated information subsumes both the circumstance where the scientist publishes information that he or she knows is false and the circumstance where the scientist publishes information with indifference to its truth. The scientist who publishes with indifference to the truth of what he or she publishes knows that the published information could mislead the reader, and so, such conduct is research misconduct.

Id.

The ALJ determined that "[Plaintiff's] systematic publication of false or fabricated information" led to only two reasonable inferences: "Either he published information that he

---
[2] Although HHS promulgated a final rule in 2005 altering the definition of "misconduct," as discussed below, this rule was not applied to Plaintiff's case because the conduct at issue occurred from 1999-2002.

6

knew to be false or fabricated, or he published it with indifference to the truth of its contents." Id. at 9. The ALJ further found that Brodie's actions could not be the product of simple negligence or honest error because of the "mass and pattern" of the false images and the "nature" of the false images – for which the alterations "fundamentally [changed] the description and meaning of [the] contents." Id. Ultimately, "the evidence offered by ORI [was] overwhelming and unrebutted that [Plaintiff] submitted and published false images and data on a wholesale basis." Id.

Plaintiff argues that the ALJ's conclusion that he was liable for research misconduct even if he only published false or fabricated images with indifference to their truth improperly lowered the standard of proof from intentional to reckless. Pl. Motion at 11-15. Plaintiff supports his assertion by citing to the ALJ's use of the term "reckless indifference" or "reckless disregard" several times in his decision. There are three reasons this argument does not prevail. First, while the ALJ may have occasionally used the word "reckless," he did in fact employ a knowing and intentional standard. Second, even if the ALJ did employ a recklessness standard, such a standard is consistent with Agency precedent and the misconduct regulation and thus cannot be arbitrary or capricious. Finally, cases in this Circuit have held in other circumstances that reckless disregard is equivalent to willful misconduct.

To begin with, Plaintiff's argument that the occasional use of the term "reckless" demonstrates that the ALJ either used a lower state-of-mind standard or an inconsistent state-of-mind standard is unpersuasive. The ALJ makes clear up front that the state-of-mind standard he employed was "knowingly and intentionally." ALJ Rec. at 4, 6. He frames the issue as whether "[Plaintiff] knowingly and intentionally published materially false or fabricated information." Id. at 4. He then concludes that "[t]he only reasonable inference I can draw from the undisputed

7

facts of this case is that [Plaintiff] knowingly and intentionally, and on a massive scale, published or attempted to publish false or fabricated information . . . ." Id. at 6 (emphasis in original). This is sufficient to prove use of the higher standard.

Even if the ALJ did employ a lower standard – knowing indifference to the truth -- the Court must defer to him if that interpretation of the regulation is reasonable. See Anthony Crane Rental, Inc. v. Reich, 70 F.3d 1298, 1302 (D.C. Cir. 1995) (citing Martin v. OSHRC, 499 U.S. 144, 150-51 (1991)). Plaintiff argues that this interpretation is not reasonable because the definition of misconduct employed in the old regulation is limited to knowing and intentional conduct. In support, Plaintiff points to the new definition of misconduct, finalized in 2005, which states:

> Research misconduct means fabrication, falsification, or plagiarism in proposing, performing, or reviewing research, or in reporting research results.
>
> . . .
>
> A finding of research misconduct made under this part requires that —
>
> (a) There be a significant departure from accepted practices of the relevant research community; and
>
> (b) The misconduct be committed intentionally, knowingly, or recklessly.
>
> . . .

42 C.F.R. §§ 93.103 – .104 (emphasis added).

Plaintiff argues that because the new standard -- which postdated the actions in this case -- now explicitly includes reckless conduct, the old standard must have excluded it. This argument is unconvincing. The text of the old regulation makes no mention of a particular state of mind, except to exclude "honest error." 42 C.F.R. § 50.102. It could thus encompass all

8

conduct that is not honest error, including reckless conduct. Furthermore, the Agency has previously interpreted the regulation to penalize statements that are made with knowledge that they would mislead the reader. See Sharma, 1993 WL 742551. Publication of false or fabricated images with "indifference to the truth of [their] contents" is conduct done with knowledge that it would mislead the reader. Such conduct is not the product of "honest error." Recklessness therefore accords with both the Agency's precedent and the plain text of the older regulation.

The ALJ, moreover, found that the new definition of misconduct was simply a "clarification" of the older definition of misconduct. ALJ Rec. at 8 n.3. He thus interpreted the older regulation to include "indifference to the truth" as prohibited conduct. This is a reasonable interpretation given the text and precedent. Because the regulation does not exclude reckless conduct on its face and because it is reasonable to include such action in the definition of misconduct, the Court believes the ALJ's interpretation is not arbitrary or capricious.

This rationale is buttressed by authority in this Circuit. In other circumstances, our Court of Appeals has explained, "[W]e have treated reckless disregard as equivalent to willful misconduct." Saba v. Compagnie Nationale Air France, 78 F.3d 664, 667 (D.C. Cir. 1996) (citation omitted). "The use of a state of mind like plain indifference as a substitute for knowledge of a specific condition is well recognized in other legal contexts." A.E. Staley Mfg. Co. v. Secretary of Labor, 295 F.3d 1341, 1351 (D.C. Cir. 2002) (citing cases). In A.E. Staley, this Circuit upheld an agency's interpretation of "willful" to include "plain indifference." Id. at 1353. Plaintiff attempts to distinguish this authority by arguing that indifference can only be a proxy for intent when the defendant was on notice of the risks of indifference. Pl. Reply at 7-8. He argues that the ALJ never demonstrated that Brodie was on notice of the risk involved in publishing false or fabricated images. This argument, however, holds no water because the risk

9

is obvious: publishing false or fabricated images will mislead the reader. As Plaintiff was clearly on notice of the risks in this case, it was not unreasonable for the ALJ to interpret "misconduct" to include publishing false or fabricated images "with indifference to the truth of [their] contents."

      B.  Standard of Care

Plaintiff next argues that the ALJ erred because he did not establish the "standard of care" that Plaintiff's conduct violated. Pl. Motion at 19. Plaintiff's claim here is twofold: first, that the ALJ never established a standard commonly accepted in the scientific community regarding the meaning of "falsification" and "fabrication"; and, alternatively, that his alleged conduct did not constitute falsification or fabrication and thus falls under the "other practices" part of the regulation for which a standard must be established. Neither is persuasive.

To repeat, misconduct is defined as "fabrication, falsification, plagiarism, or other practices that seriously deviate from those that are commonly accepted within the scientific community . . . ." 42 C.F.R. § 50.102. Plaintiff's first contention -- that the ALJ was required to establish a commonly accepted standard for "falsification" or "fabrication" -- relies upon a misunderstanding of the definition of misconduct. The part of the definition that requires the ALJ to determine that conduct "seriously deviate[d] from those [practices] that are commonly accepted within the scientific community" does not modify "falsification," "fabrication," or "plagiarism"; it modifies only the "other practices" that may constitute misconduct. When the Agency determines that someone has committed "falsification, fabrication [or] plagiarism," no analysis of the "other practices" is necessary because such conduct is clearly a violation of any scientific standard. See Kimon J. Angelides, 1999 WL 88783, at *5 (DAB No. 1677 (1999)) ("[a]ny intentional falsification of data and experimental results in grants and papers has always

10

been regarding as misconduct"); see also John C. Hiserodt, 1994 HHSDAB LEXIS 846, at *37 (DAB No. 1466 (1994)) ("the willful falsification and fabrication of scientific data which Respondent is alleged to have engaged in would constitute scientific misconduct").

Plaintiff next argues that his conduct -- publishing false or fabricated documents -- must be considered an "other practice" because it is not fabrication, falsification, or plagiarism. Plaintiff claims that, because the ALJ assumed for the purpose of summary disposition that he did not himself create the false or fabricated images, he could not have engaged in "falsification" or "fabrication." While the ALJ did grant Plaintiff the benefit of all inferences, including this one, he never held that Plaintiff did not falsify or fabricate the images at issue. ALJ Rec. at 8. (In fact, he appears to hold exactly the opposite -- that Plaintiff did in fact alter the images -- later in his recommendation. ALJ Rec. at 27.) The ALJ held that, even assuming Plaintiff did not make the images himself, he still committed falsification or fabrication because, at the very least, he published images that were false. Id. The ALJ thus interpreted his misconduct to be either falsification or fabrication, neither of which required a finding of a scientific standard.

As previously noted in Section III.A., *supra*, the Court must defer to an agency's interpretation of its regulation if it is reasonable. Plaintiff fails to demonstrate why it was unreasonable for the ALJ to interpret "falsification" and "fabrication" to include the act of knowingly publishing false and fabricated documents. While the physical act of publishing is not explicitly included in the definition of misconduct, falsification of this sort only becomes harmful to the scientific community once it is published. Without the publication, the falsification or fabrication would never have the opportunity to misinform the reader. It seems eminently reasonable, therefore, for "fabrication" and "falsification" to include the knowing publication of false or fabricated images, and the Court will defer to such an interpretation of the

11

regulation. The ALJ's failure to establish an independent scientific standard was thus not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

    C.  Notice

Plaintiff's next challenge asserts that he received inadequate notice of the culpability standard that would be applied to his conduct. There is no dispute that Plaintiff received ample notice that ORI charged him with 15 instances of "knowingly and intentionally" publishing false images. Admin. Record at 2059 (ORI Charge Letter). He nevertheless maintains that the ALJ's use of a recklessness standard unfairly prejudiced him. As discussed in Section III.A., *supra*, the ALJ ultimately made a determination using the higher standard, so Plaintiff's notice argument cannot survive.

Even if the ALJ employed a lower standard, Plaintiff gains no traction. He cannot show that any purported lack of notice prejudiced him. Plaintiff argues that he would have presented different evidence if he had thought he was being judged on a recklessness standard – namely, evidence on "whether he should have been aware that an image was falsified, the scope of his duty, if any, to investigate and verify the authenticity of those images, as well as factual issues regarding his standard of care in preparing grant applications and other publications." Pl. Motion at 9. As discussed in Section III.B., *supra*, the argument on standard of care is a red herring. The other issues, moreover, are inextricably intertwined with a defense to intentional or knowing falsification. For example, if Plaintiff were to assert he did not know the images were false, that would have been a centerpiece of his defense under any standard. At bottom, Plaintiff fails to demonstrate how presenting this putative evidence would have altered any of the ALJ's conclusions that he committed 15 instances of research misconduct. Given his inability to show any way in which he was harmed by his alleged lack of notice, the Court finds that the notice in

this case was "reasonably calculated . . . to apprise [him] of the pendency of the action and afforded [him] an opportunity to present [his] objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1949). Summary judgment on this issue is thus also proper.

   D.  Sufficiency of the Evidence

Plaintiff's last challenge to the ALJ's determination that he committed research misconduct focuses on the sufficiency of the evidence for each of the fifteen findings. Plaintiff claims that the ALJ erred in granting summary disposition because there were material facts in dispute for each finding. In so arguing, Plaintiff points to evidence that was not before the ALJ because it was not timely submitted. It is axiomatic that this Court must judge the arbitrary and capricious nature of the ALJ's decision on the evidence that he had before him at the time of his decision. IMS, P.C. v. Alvarez, 129 F.3d 618, 623 (D.C. Cir. 1997) ("It is a widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made.") (citing Puerto Rico Higher Educ. Assistance Corp. v. Riley, 10 F.3d 847, 850-51 (D.C. Cir. 1993) ("We base our review of the Department's actions on the materials that were before the Department at the time its decision was made.")); Walter O. Boswell Mem'l Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984) ("If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision.").

Plaintiff contends that his late evidence, including a personal affidavit, should have been considered because he would have had the opportunity to testify at a hearing. Plaintiff fails to explain, even if that is the case, why he did not submit this evidence as required by the ALJ's scheduling order or as part of his opposition to summary disposition before the ALJ. As Plaintiff

13

failed to avail himself of either of these opportunities, this Court cannot properly consider the untimely evidence in deciding whether a dispute of material fact existed.

Having reviewed the evidence that the ALJ did consider, the Court cannot find that its holding on each of the acts of misconduct was not arbitrary or capricious. The ALJ's findings on intent, moreover, were reasonable given the overwhelming evidence of fabrication and falsification. The ALJ's decision makes clear that he "examine[d] the relevant data and articulate[d] a satisfactory explanation for [the Agency's] action including a rational connection between the facts found and the choice made." State Farm, 463 U.S. at 43. As such, the Court concludes that the ALJ's findings should be upheld.

E. Present Responsibility

In addition to contesting the merits of the ALJ's decision, Plaintiff also argues that the ALJ erred by failing to determine whether Plaintiff was "presently responsible" when he recommended a seven-year debarment. Pl. Motion at 48-56. Plaintiff posits that the ALJ considered only Plaintiff's past misconduct and failed to consider mitigating factors. Id.

The central issue in any debarment is whether the individual or entity is "presently responsible" to receive federal funds. See Uzelmeier v. United States Dep't of Health and Human Serv., 541 F. Supp. 2d 241, 248 (D.D.C. 2008) ("[T]he relevant question is whether or not one could or should be entrusted with public funds . . . at the present time or going forward."). "While debarment requires the existence of 'past misconduct,' the phrase 'present responsibility' does not refer to plaintiff's current job, but rather to whether a person's exclusion is in the public interest." Id. (citing Burke v. EPA, 127 F. Supp. 2d 235, 239 (D.D.C. 2001)).

Here, the ALJ determined that it was in the public interest to debar Plaintiff from receiving federal funds for seven years. ALJ Rec. at 27-28. He wrote, "I have considered [the

14

seven-year ban] in light of the undisputed facts relating to the seriousness of [Plaintiff's] misconduct and the aggravating and mitigating factors governing the length of debarment that are set forth at 42 C.F.R. § 93.408." Id. at 27. The ALJ found that the instances of Plaintiff's misconduct were "extremely serious," "numerous," and "striking." Id. He determined that the misconduct had a "substantial impact" on several grant applications and journal articles. Id. Despite Plaintiff's argument to contrary, the ALJ did consider whether Plaintiff had expressed remorse or accepted responsibility for his actions, finding that he had done neither. Id. He considered and rejected as irrelevant, moreover, the fact that some of Plaintiff's current colleagues considered him to be honest. Id. All of this led to the ALJ's determination that Plaintiff "is manifestly untrustworthy to receive, utilize, or distribute federal funds." Id. (emphasis added). The ALJ's use of the present tense "is" -- as opposed to the past tense "was" -- when describing his trustworthiness is a good indicator that the ALJ did determine Brodie's present responsibility. It is clear from his decision, therefore, that the ALJ considered both aggravating and mitigating factors in determining that it was in the public interest to debar Plaintiff for seven years. Id. Plaintiff has thus failed to demonstrate that the ALJ's recommendation was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. As such, the Court will grant summary judgment for Defendants on this issue.

    F.  Constitutional Claims

Having considered and rejected Plaintiff's APA claims, the Court now considers his constitutional challenges to his debarment. First, Plaintiff maintains that the Agency violated his due process rights in two ways: (1) by denying him an opportunity for a hearing to challenge ORI's findings; and (2) by using a preponderance-of-the-evidence standard instead of a clear-and-convincing standard to determine if he should be debarred for seven years. Second, Plaintiff

15

argues that his Fourth Amendment right against unreasonable searches and seizures was violated when the University searched his home and computer.

### 1. *Opportunity for a Hearing*

Count III of Plaintiff's Complaint alleges that Defendants violated his Fifth Amendment due process rights by denying him an opportunity for a hearing. Compl., ¶¶ 77-78. Defendants argue that Plaintiff received all the process that he was due. Opp. at 63. In his pleadings on the Motions, Plaintiff does not oppose Defendants' contention. Nor could he for the same reason a civil litigant who loses on summary judgment cannot complain that he had a due process right to a trial. Given Plaintiff's abandonment of this count, the Court finds Defendants are entitled to summary judgment.

### 2. *Standard of Proof*

Plaintiff next argues that the ALJ erred in applying a preponderance-of-the-evidence standard to the debarment proceedings. He contends that the Fifth Amendment requires the more stringent clear-and-convincing standard in proceedings that impose a seven-year debarment. Yet Plaintiff never raised this issue before the administrative agency, and he offers no reason why this Court should consider it now. "Arguments that are not raised before an administrative agency cannot be raised, for the first time, to the reviewing court." Stephens v. Dep't of Labor, 571 F. Supp. 2d 186, 190 n.4 (D.D.C. 2008) (citing United Transp. Union v. Surface Transp. Bd., 114 F.3d 1242, 1244-45 (D.C. Cir. 1997)).

Plaintiff, moreover, readily concedes that "the administrative agency and this court have applied a preponderance-of-the-evidence standard [in debarment proceedings]," Pl. Reply at 23, and notes that "there are no debarment cases in which the clear and convincing evidence [standard] has been applied." Id. at 23 n.9. "Given the paucity of authority for [Plaintiff's]

16

position, this Court will follow other debarment cases which have held that debarment need only be supported by a preponderance of the evidence." Textor v. Cheney, 757 F. Supp. 51, 57 n.4 (D.D.C. 1991). Plaintiff has failed to demonstrate that it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law for the ALJ to use a preponderance-of-the-evidence standard. Defendants are thus entitled to summary judgment on this claim as well.

### 3. Illegal Search and Seizure

Count II of Plaintiff's Complaint alleges that Defendants violated his Fourth Amendment rights to be secure against unreasonable searches and seizures when the University searched his premises and computer during its 2002 investigation. Compl., ¶¶ 66-72. Defendants argue that they are entitled to summary judgment on this count because the University, not Defendants, conducted the search, and, in any event, the search was reasonable. Plaintiff offers no opposition to this argument, nor does he address how such a claim could proceed where the University is not even a party to this lawsuit. The Court thus finds that Plaintiff has also abandoned Count II, thereby entitling Defendant to summary judgment here as well.

## IV. Conclusion

Because the ALJ did not act in an arbitrary and capricious manner, and considered all of the relevant evidence, he did not err in debarring Plaintiff for seven years. The Court will therefore grant Defendants' Motion and deny Plaintiff's Motion. A separate Order consistent with this Opinion will issue on this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 12, 2011

17